UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 97-4543

MARTIR VELASQUEZ ARAGON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-97-18)

Submitted: June 23, 1998

Decided: July 28, 1998

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Sandra R. Robinson, Manassas, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, James K. Foster, Special Assistant
United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After a bench trial, the district court convicted Martir Velasquez Aragon on several counts arising from his possession of a large quantity of powder cocaine on an international flight. See 21 U.S.C. §§ 841(a)(1), 952(a), 955, 960(a)(1) & (a)(2) (1994); see also 49 U.S.C. § 46505(b)(1) (1994). Before trial, Aragon attempted unsuccessfully to suppress the cocaine that was discovered in his luggage, claiming that the search of his bags violated the Fourth Amendment. In this appeal, Aragon assigns error to the district court's ruling following the suppression hearing. Additionally, Aragon claims that there was insufficient evidence to support his convictions related to the cocaine in his possession and the concealed weapon on his person. Because we find no merit to Aragon's contentions, we affirm each of the criminal convictions.

Arriving at Dulles International Airport after a flight from El Salvador, Aragon was subjected to a routine border search. Although Aragon presented himself at the border as a professional courier, he did not have the documentation couriers ordinarily use in their business. In the course of her routine search, the customs agent emptied Aragon's suitcase. After observing that Aragon appeared nervous and that his suitcase had an unusual bottom, the investigating agent decided to take the bag out of Aragon's sight and drill a small hole in its bottom. When cocaine poured out of the bag, agents cut it open and discovered more than 500 grams of cocaine. Aragon was arrested and instructed to empty his pockets, one of which contained a switch-blade knife. During questioning, Aragon specifically denied knowing about the cocaine in the bag before the questioning agent informed Aragon what type of drugs had been discovered.

Before trial, the district court found that the search was entirely legal and refused to suppress the cocaine. When he took the stand in his own defense, Aragon testified that the bag was not his and he did not know that he had carried cocaine into the United States. Aragon stated that he was to receive $100 from someone named Flor Marie for delivering the suitcase. Aragon's attempts to contact Flor Marie that night were unsuccessful. After considering the evidence, the dis-

2

trict court convicted Aragon and sentenced him to 87 months in prison. Aragon appeals his conviction.

Aragon first assigns error to the district court's refusal to suppress the cocaine discovered in the suitcase. Aragon claims that the search was not supported by a reasonable articulable suspicion. For the initial search of Aragon's possessions, that level of suspicion was not required. Routine border stops and searches may be conducted without probable cause or reasonable articulable suspicion, in order to regulate collection of duties and prevent introduction of contraband. See United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985). Border searches have been considered to be "reasonable" by definition because the person or item in question came into the United States from elsewhere. See United States v. Ramsey, 431 U.S. 606, 619 (1977). There is no question but that the customs agent conducted her initial search of the baggage in full compliance with the Fourth Amendment.

Following the more pedestrian inspection, the investigating agent also drilled a hole in the bottom of Aragon's bag. It is at least debatable that this action went beyond the boundaries of a routine inspection. See United States v. Johnson, 991 F.2d 1287, 1293 (7th Cir. 1993) (assuming but not deciding removal of inner shell of suitcase was non-routine search). The Supreme Court did not define "routine search" in Montoya de Hernandez. However, only strip searches and body cavity searches have consistently been considered sufficiently intrusive to be non-routine. See United States v. Braks, 842 F.2d 509, 512-13 (1st Cir. 1988); see also United States v. Ramos-Saenz, 36 F.3d 59, 61 (9th Cir. 1994). Neither is involved here, but because some degree of force was used to continue the search, see Braks, 842 F.2d at 512, we will assume for the purposes of this case that this was something more than a "routine search."

Before the agent could initiate a non-routine search, a reasonable suspicion was required. See United States v. Oriakhi, 57 F.3d 1290, 1297 (4th Cir. 1995). Aragon exhibited unusual nervousness as he approached the customs station and during questioning. A person's nervousness alone may be enough to support a non-routine search. See United States v. Carreon, 872 F.2d 1436, 1442 (10th Cir. 1989). In addition, the investigating customs agent noticed during the course

3

of the routine search that a flap in the bottom of the bag, which would ordinarily be rigid, was pliable. Her experience with luggage led her to expect that the flap would contain a piece of cardboard, but it did not. Coupled with Aragon's nervousness, the agent had ample evidence on which to form her reasonable suspicion. Even if we assume that drilling a hole into the bag was a non-routine search, the district court did not err in concluding that the customs agent had reasonable suspicion to support the more intrusive search.

Aragon's suggestion that nervousness alone is not sufficient is premised on United States v. Taylor, 917 F.2d 1402, 1409 (6th Cir. 1990). Not only is Taylor inapposite because it did not concern a border search, but the customs agent in this case possessed additional information arousing her suspicion, namely, the odd nature of Aragon's suitcase. In addition, in an attempt to imply that the agent somehow violated Aragon's Fourth Amendment rights by her failure to obtain a search warrant, Aragon again relies on cases not applicable to border searches. See United States v. Place , 462 U.S. 696, 698 (1983); United States v. Ross, 456 U.S. 798, 800 (1982). Applying the appropriate standard to the customs agent's investigation, Aragon's Fourth Amendment rights were not offended in any way. The district court did not err in admitting the evidence.

Aragon next challenges the sufficiency of the evidence used to convict him. Aragon contends that his convictions are "supported solely by the fact that he merely possessed a large amount of cocaine." In attacking the sufficiency of the evidence, Aragon primarily impugns the sufficiency of the Government's investigation regarding the individual Aragon attempted to implicate as the owner of the suitcase containing cocaine. This court will sustain a criminal conviction where "the evidence, when viewed in the light most favorable to the government, [is] sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993); see also Glasser v. United States, 315 U.S. 60, 80 (1942). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. See United States v. Tresvant , 677 F.2d 1018, 1021 (4th Cir. 1982). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be `confined to cases where

4

the prosecution's failure is clear.'" United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984). (quoting Burks v. United States, 437 U.S. 1, 17 (1978)). During this inquiry, this court neither weighs evidence nor reviews witness credibility. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

To support Aragon's conviction, the Government was required to present evidence of possession of cocaine found in the suitcase and intent to distribute on the part of Aragon. Aragon contends that he was not aware of the cocaine in the suitcase and was therefore not in knowing possession of the drugs.* However, the district court could infer from Aragon's possession of and control over the suitcase-- something he does not deny--that he was aware of its contents. See United States v. Tylkowski, 9 F.3d 1255, 1260-61 (7th Cir. 1993). Moreover, Aragon denied that he knew there was cocaine in the bag before he was informed specifically what drugs the customs agents discovered in the suitcase. This further suggests his knowledge of the cocaine in his possession. The district court did not find Aragon's tes- timony that he was unaware of the presence of the drugs credible. This court is not is a position to disturb that finding. See Saunders, 886 F.2d at 60.

Aragon suggests that the district court gave too much weight to the fact that Aragon responded he did not know the cocaine was in the suitcase before the agents informed him what type of drugs they had discovered to determine that he had knowledge of the drugs' presence in the bag. This contention mistakes the lens through which we must view the evidence. Taken in a light most favorable to the Govern- ment, Aragon's identification of the drugs as cocaine before the agents told him it was cocaine they found is evidence of his knowl- edge of their presence. There was no clear failure of evidence on the part of the prosecution. Aragon's conviction for possession with intent to distribute cocaine was supported by evidence sufficient for a rational trier of fact to find Aragon guilty beyond a reasonable doubt.

_____

*Aragon does not challenge the Government's proof regarding his intent to distribute the cocaine. See United States v. Roberts, 881 F.2d 95, 99 (4th Cir. 1989) (noting intent may be inferred from quantities too large for personal consumption).

5

Finally, although Aragon does not elaborate on this issue in his brief, we conclude that there was also sufficient evidence to convict him of possession of a weapon on an aircraft. When Aragon was searched pursuant to his arrest, he was in possession of a switchblade. Aragon came directly from the aircraft to the customs area. There is no evidence of record which would suggest where he might have obtained the weapon on his way from the aircraft to the customs area. Again, considering the evidence in a light most favorable to the verdict, there was sufficient evidence to convict Aragon of this crime.

Finding no merit to any of Aragon's contentions on appeal, we affirm his convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6